UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA LOYD,

    Plaintiff,

v.                                                                      Case No. 12-cv-12567
                                                                     Hon. Gershwin A. Drain

ST. JOSEPH MERCY OAKLAND/TRINITY
HEALTH, *et al.*,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY OF DOCUMENTS SOUGHT FROM DEFENDANT SJMO [#18]

**I.**    **INTRODUCTION**

On June 13, 2012, Plaintiff, Anita Loyd, filed the instant discrimination in employment action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and Michigan's Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.*  Plaintiff also brings claims of intentional infliction of emotional distress and interference with contractual employment relationship.

Presently before the Court is Plaintiff's Motion to Compel Discovery of Documents sought from Defendant, St. Joseph Mercy Oakland/Trinity Health ("SJMO"), filed on February 1, 2013. Plaintiff seeks to compel the production of the Potential Error Event Reporting System ("PEERS") report prepared by a nurse regarding Plaintiff's conduct on June 16, 2011, conduct which allegedly led to Plaintiff's discharge.  Plaintiff also seeks to compel video surveillance of the Emergency Room from June 16, 2011.  This matter is fully briefed and a hearing was held on March 13, 2013.

For the reasons that follow, the Court denies Plaintiff's Motion to Compel.

## II.   FACTUAL BACKGROUND

Plaintiff is a fifty-two year old, African American female who was employed by SJMO for twenty-five years as a security officer in its Public Safety Department from June 10, 1986 until her termination on July 1, 2011.  On June 16, 2011, Plaintiff was dispatched for security assistance to restrain a patient at SJMO's Emergency Room, #19.  Defendant maintains that Plaintiff assumed the patient had been admitted for drug addiction only and gave this patient inaccurate advice that she could leave the hospital premises.  These comments allegedly escalated the situation and placed the nursing staff and patient in a potentially harmful and dangerous situation because the patient became agitated and tried to rip the I.V. out of her arm.   Plaintiff disputes Defendant's assertions that Plaintiff's conduct put the patient and nursing staff at risk.

Sonya Moak, a nurse who was present during the incident on June 16, 2011, drafted a report utilizing SJMO's PEERS system.  Moak testified that she did so to improve and provide a safer environment for staff and patients.

> A. Let me finish.  In my mind the PEERS Reporting is done that when you see a staff member performing or doing something that is — their behavior is not ----
> Q. Appropriate?
> A. –appropriate, then we write the PEERS Report so that they can get some education or some information to make–to make it a better work environment, a better safe –that's why I use the PEERS.

*See* Def.'s Resp., Ex. 1 at 124.  Plaintiff's supervisors learned of the incident and conducted an investigation, ultimately concluding that Plaintiff's behavior put both the patient and staff at risk of serious harm.  Plaintiff was on a Final Written Warning, thus the incident on June 16, 2011 resulted in her discharge.  Plaintiff's discharge paperwork stated that Plaintiff "acted outside the scope of her

duties and advised a patient incorrectly about her ability to leave the premises," and that "this behavior exacerbated the patient's behavior in a negative manner that resulted in the patient attempting to pull the IV out and required SJMO staff to place the patient in restraint." *See* Def.'s Resp., Ex. 2.

## III.   LAW & ANALYSIS

Plaintiff seeks the production of the PEERS report prepared by Moak in order to determine the veracity of the allegations set forth in Plaintiff's discharge paperwork. Defendant has objected to production of the PEERS report on the basis that the document is confidential and protected from discovery by the peer review confidentiality privilege set forth in the Michigan Public Health Code.

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Federal Rule of Civil Procedure 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

"[T]he peer review statutory regime protects peer review from intrusive general public scrutiny. All the peer review communications are protected from discovery and use in any form of legal proceedings." *Armstead v. Diederich*, No. 296512, 2011 Mich. App. LEXIS 1367, *4-5 (Mich. Ct. App. July 21, 2011). The privilege for peer review data is set forth in three separate statutes. *Armstead*, 2011 Mich. App. LEXIS 1367, at *4. Specifically, Michigan Compiled Laws § 333.20175(8) states:

> [t]he records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility . . . are confidential, shall be used only for the purposes provided in this article, are not public records, and are not subject to court subpoena.

MICH. COMP. LAWS § 333.20175(8). Next, Michigan Compiled Laws § 333.21515 provides that "[t]he records, data, and knowledge collected for or by individuals or committees assigned a review function described in this article are confidential and shall be used only for the purposes provided in this article, shall not be public records, and shall not be available for court subpoena." MICH. COMP. LAWS § 333.21515. Finally, Michigan Compiled Laws § 331.533 states "[e]xcept as otherwise provided in [this statute], the record of a proceeding and the reports, findings, and conclusions of a review entity under this act are confidential, are not public records, and are not discoverable and shall not be used as evidence in a civil action or administrative proceeding." MICH. COMP. LAWS § 331.533.

Plaintiff argues that the PEERS report is not subject to the peer review privilege because Plaintiff, as a security officer, is not a physician or other health care professional subject to peer review procedures imposed on hospitals. This argument lacks merit. Michigan courts have repeatedly held that the peer review privilege encompasses hospital incident reports where such reports are "compiled in furtherance of improving health care and reducing morbidity and mortality." *Gallagher v. Detroit-Macomb Hosp. Ass'n*, 171 Mich. App. 761, 768; 431 N.W.2d 90 (1988); *see also Ligouri v. Wyandotte Hospital and Med. Center*, 253 Mich. App. 372, 375-77; 655 N.W.2d 592 (2002). In *Gallagher*, the Michigan Court of Appeals concluded that an incident report prepared at the time of the plaintiff's decedent's injury was appropriately excluded under the peer review privilege because it was prepared for a committee assigned a review function. *Gallagher,* 171 Mich. App. at 768. Thus, the PEERS report is subject to the peer review privilege if it was "collected for or by an individual or committee assigned a review function." *Id.*

Here, Defendant has offered evidence that the PEERS program is used for the improvement of patient care and to reduce morbidity and mortality rates. *See* Def.'s Resp., Ex. 4. Rita Stockman,

Chief Accreditation, Regulatory & Risk Officer at SJMO, states that:

> 3. Staff members at SJMO are trained to utilize the Incident Reporting System to report incidents that caused near miss, potential or actual patient injury, death, or potential legal liability.
> 4. I review all reports made through the Incident Reporting System. As appropriate, I investigate the events or incidents reported for the purpose of improvement of the quality of patient care and the reduction of morbidity and mortality rates.

*Id.* at 2. Thus, the Court concludes that the PEERS report is subject to privilege because its purpose is for the improvement of patient care.

Next, Plaintiff argues that Defendant waived the peer review privilege by including information from the report in the Human Resources Department's Investigation Summary, as well as by providing excerpts from the report to the Equal Employment Opportunity Commission and the Michigan Department of Civil Rights. Plaintiff offers no authority for the proposition that the peer review privilege can be waived. While the Michigan courts have yet to rule on this precise issue, it would seem that the Michigan courts would ultimately conclude that the peer review privilege cannot be waived based on the clear statutory language that peer review information may be used "only for the purposes" provided in the statute. MICH. COMP. LAWS § 333.21515. Further, unlike other statutorily-created privileges which contain an explicit waiver provision, the peer review statutes contain no waiver provision. *See* MICH. COMP. LAWS § 600.2157 (patient-physician privilege waived if patient brings an action to recover for personal injuries); *see also* MICH. COMP. LAWS § 339.1611(providing a waiver for communications between a marriage counselor and his or her clients, unless the counselor is a party defendant to a civil, criminal or disciplinary action arising from that counseling).

As to Plaintiff's request for an order compelling the production of video surveillance from

June 16, 2011, Defendant maintains that the only video surveillance is of the hallways in the hospital and not in any of the patient rooms. Further, Defendant contends that the recordings from June 16, 2011 have already been erased and overwritten pursuant to policy. Defendant provides the declaration of Greg Williams, Supervisor in the Public Safety Department, who states that the video recordings are automatically overwritten and erased every thirty days. *See* Def.'s Resp., Ex. 5.

Plaintiff contends that Defendant's destruction of this evidence amounts to spoliation of evidence subject to sanction. Plaintiff argues that Defendant should have known that Plaintiff's termination on July 1, 2011 would lead to litigation. Thus, Defendant should have preserved the video surveillance from June 16, 2011. Defendant argues that it was put on notice of the possibility of litigation when it received a copy of Plaintiff's EEOC complaint, which was filed three months after June 16, 2011, or on September 9, 2011.

Plaintiff counters that Defendant's assertion that it did not learn of the potential for litigation until September 9, 2011 is disingenuous. Plaintiff relies on the fact that she filed a grievance with her representative union on July 5, 2011, four days after her termination, to demand reinstatement to her job. Thus, SJMO was on notice of the potential lawsuit before the expiration of the thirty day retention period for video surveillance. Plaintiff argues that the video surveillance is essential to proving her claims. Plaintiff will be unable to challenge the testimony of Defendant's witnesses concerning the events on June 16, 2011without the video surveillance. For this reason, Plaintiff requests that the Court sanction Defendant for destroying this evidence when Defendant knew or reasonably should have known that it was relevant to potential litigation. *See Bloemendaal v. Town & Country Sports, Inc.*, 255 Mich. App. 207; 659 N.W.2d 684 (2002); *Brenner v. Kolk*, 226 Mich. App. 149, 161-62; 573 N.W.2d 65 (1997). Specifically, Plaintiff requests an order excluding the testimony of Defendant's witnesses. The Court finds that Plaintiff's requested sanction is

unwarranted. Rather, Plaintiff may be entitled to a jury instruction that the jury may draw an inference adverse to the culpable party from the absence of the evidence. *Brenner*, 226 Mich. App. at 161-62. However, the Court will revisit the propriety of a spoilation instruction at the time of trial.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel [#18] is DENIED.

Dated: March 18, 2013                                          /s/ Gershwin A Drain
                                                               GERSHWIN A. DRAIN
                                                               UNITED STATES DISTRICT JUDGE