UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANITA LOYD ,

              Plaintiff,

                                          Case No. 12-12567
vs.                                       HON. GERSHWIN A. DRAIN


ST.  JOSEPH MERCY OAKLAND/
TRINITY HEALTH SJMO PUBLIC
SAFETY DEPARTMENT, *et al.*,

              Defendants.

_____/

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#27]

## I.     INTRODUCTION

On June 13, 2012, Plaintiff, Anita Loyd, filed the instant discrimination in employment action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS  § 37.2101 *et seq*.  Plaintiff also brings claims of intentional infliction of emotional distress and interference with contractual

-1-

employment relationship.

Presently before the Court is the Defendants, St. Joseph Mercy Oakland/Trinity Health SJMO Public Safety Department's, Ryan Hernandez's, Stephen Kazimar's, Dave Sikorski's and GregWilliams's, Motion for Summary Judgment, filed on June 14, 2013. This matter is fully briefed and a hearing was held on August 28, 2013. For the reasons that follow, the Court grants Defendants' Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

Plaintiff is a fifty-two year old, African American woman who was employed by SJMO for twenty-five years as a security officer in its Public Safety Department. Among other duties, Public Security Officers ("PSOs") are responsible for responding to calls for assistance to control  disorderly or combative patients.  At the time of Plaintiff's termination, Steve Kazimer and Greg Williams were the supervisors of the PSOs.  The PSOs are represented by the Michigan Association of Police under a collective bargaining agreement ("CBA").

Plaintiff was terminated after Human Resources Representative Ryan Hernandez conducted an investigation concerning a June 16, 2011 incident. Hernandez's investigation determined that Plaintiff's behavior placed both the patient and medical staff at risk of serious harm. Further, as of June 16, 2011, Plaintiff was

on final written warning status from three prior findings of unsatisfactory job performance.        The first warning Plaintiff received stemmed from an incident that occurred on May 3, 2001. On that date, a nurse complained that Plaintiff refused to assist her in restraining a patient.  Instead of responding as directed, Plaintiff questioned the nurse as to whether she had doctor's orders to restrain the patient. Plaintiff refused to assist the nurse and received a written warning for neglect of duty. The warning stated: "Refusing to assist with the patient could have caused security and safety complications and falls under the parameters of unacceptable work performance."  In 2004, Plaintiff received a second written warning for refusing to work forced overtime.

On May 19, 2010, Plaintiff was feeling ill and left her post assignment to go to the Emergency Department to be examined.  However, Plaintiff failed to notify her supervisor that she was leaving her post and did not clock out before going to the Emergency Department.  Plaintiff again abandoned her post assignment on June 4, 2010, when she was assigned to the exterior patrol post.  Plaintiff was responsible for driving a security truck around the hospital campus to ensure the grounds were safe. During her shift, Plaintiff was observed sitting on a nearby resident's front porch.  As a result, Plaintiff received a third and final written warning on June 25, 2010.  The June 25, 2010 final warning stated that Plaintiff's "actions and behavior are seen as

major infractions of SJMO work rules, absence from her work station, insubordination, falsification of time records. Future incidents will result in additional discipline, up to and including dismissal."

On June 16, 2011, Plaintiff was dispatched to the Emergency Department, Room 19, to assist with a four point restraint on an agitated and combative patient. Room 19 is a psychiatric patient room. After the patient became verbally abusive and threatened to stab herself and others, security was called to assist with a medical restraint.

Instead of applying restraints however, Plaintiff asked the patient why she was in the hospital. The patient falsely stated that she was only in "for drugs." In fact, the patient had been involuntarily admitted, or "petitioned and certified" for psychiatric issues and a drug overdose. Plaintiff advised the patient that she could leave if she was only in the hospital for drugs. When the nurse advised Plaintiff that she had no authority to advise patients that they were free to leave, Plaintiff began arguing that "drugs and alcohol is [sic] different than psych, you can't keep her here, she can sign herself out." Plaintiff then demanded to see the patient's petition and certification paperwork. The patient became more agitated, grabbed her I.V. and attempted to rip it out of her arm. The patient was ultimately restrained with the help of two other PSOs, Sikorski and Kowalak, while Plaintiff stood by without providing any

assistance in restraining the patient.

Hernandez collected statements from all of those present during the June 16, 2011 incident. Sikorski stated that he overhead Plaintiff "tell the patient that she did not have to stay if she did not want to." He also said that Plaintiff informed the nurse that "drugs and alcohol is different than psych." He further stated that the patient became more agitated and insisted upon leaving. Kowalak corroborated Sikorski's account. The nurse, Mark Bott, stated that he

> [N]ever had a security guard overstep their boundaries like this. I think it was a huge safety issue because she made the entire situation worse. The patient had to be restrained and was angry and said, "I was just told I could go, if it was just drugs.

Plaintiff's report stated that: "Patient was put into 4 point restraint without order[s] at the time of the restraint, she stated that she came in for drug problems." However, Plaintiff concedes that her report incorrectly claimed that the patient was not petitioned and certified and was restrained without orders.

Based on Hernandez's investigation, Plaintiff's Supervisors, Williams and Kazimer, concluded that her conduct, coupled with her final written warning status, warranted her termination. A July 1, 2011 Disciplinary Action Form states:

> Plaintiff acted outside the scope of duties and advised a patient incorrectly about the patient's ability to leave the premises. This behavior exacerbated the patient's behavior in a negative manner that resulted in the patient attempting to pull I.V. out & required SJMO staff to place the patient in restraints. This is a major infraction violation of

the employee discipline policy. Plaintiff is currently on a Final Written Warning therefore this infraction results in discharge from employment effective today 7/1/11.

## III.   LAW & ANALYSIS

### A.   Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable

to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

**B.   Defendants' Motion for Summary Judgment**

**1.   Age, Gender and Race Discrimination (Counts I, II and III)**

Title VII makes it unlawful for an employer to "discharge any individual . . . because of such individual's race, [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1). The ADEA makes it unlawful for an employer to take "an adverse employment action against an employee because of that employee's age." *Marsh v. Associated Estates Realty Corp.*, No. 12-1594, 2013 U.S. App. LEXIS 7177, *12-13 (6th Cir. Apr. 5, 2013) (citing 29 U.S.C. § 623(a)). Michigan's ELCRA also prohibits employers from discriminating against an individual on the basis of age, race or gender. *See* MICH. COMP. LAWS § 37.2102 *et seq.*

Plaintiff may establish age, race or gender discrimination by either presenting circumstantial or direct evidence. *Geiger v. Tower Auto*, 579 F. 3d 614, 622 (6th Cir. 2009); *see also Harrison v. Olde Financial Corp.*, 225 Mich. App. 601, 610; 572 N.W. 2d 679 (1997); *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004)(Claims brought under Title VII, the ADEA, and Michigan's ELCRA are analyzed according to the same elements and framework.); *Marsh v. Associated Realty Corp.*, 2013 U.S. App. LEXIS 7177, *12-13; *Bondurant v. Air Line Pilots Ass'n. Int'l*, 679 F.3d 386, 394 (6th Cir. 2012).

Where there is only circumstantial evidence of discrimination, a plaintiff must use the *McDonnell Douglas* burden shifting analysis to establish a prima facie case of race or gender discrimination under Title VII and the ELCRA by showing: (1) that

-8-

she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job; and (4) she was treated differently from similarly situated employees from a non-protected class or replaced by a person not a member of her protected class. *McDonnell Douglas v. Green, 411 U.S. 792 (1973)*; *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995); *Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 361 (1991); *LaPointe v.United Autoworkers Local 600*, 8 F. 3d 376, 379 (6th Cir. 1993) (*LaPointe I*); *Allen v. Comprehensive Health,* 222 Mich. App. 426, 429; 564 N.W. 2d 914 (1997).

To establish a claim for age discrimination under the ADEA and the ELCRA, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employment decision." *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177-78 (2009). Plaintiff must show: "(1) [s]he was at least 40 years old at the time of the alleged discrimination, (2) [s]he was subjected to an adverse employment action, (3)[s]he was otherwise qualified for the position, and (4) [s]he was rejected and someone outside the protected class was selected." *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010).

If plaintiff proves a prima facie case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment

-9-

decision.  *McDonnell Douglas*, 411 U.S. at 802.  Even though the burden of going forward is on the defendant once a plaintiff has established a prima facie case, the ultimate burden of persuasion never shifts from the plaintiff. *Id*.  Once the employer carries this burden, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination.  *Id*.; *Ang v. Proctor & Gamble Co.*, 932 F. 2d 540, 548 (6th Cir. 1991).  The plaintiff can meet this burden by showing: 1) that the stated reasons had no basis in fact; 2) that the stated reasons were not the actual reasons; or 3) that the stated reasons were insufficient to explain the employer's action. *Wheeler v. McKinley Enters.*, 937 F. 2d 1158, 1162 (6th Cir. 1991).  The burden of persuasion always, remains, however, with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Here, Plaintiff's claims must be dismissed because she cannot demonstrate a prima facie case of age, gender or race discrimination.  Beyond her status as a 52 year old, African American woman, she has failed to come forward with any evidence showing that there are questions of fact for the jury on any of her asserted claims. Even if Plaintiff could set forth a prima facie case of discrimination, she cannot establish Defendants' investigation and subsequent decision to terminate her employment, based on an honest belief that her failure to follow policy jeopardized

-10-

the safety of a patient and the medical staff, was pretext for discrimination.

The first two elements of Plaintiff's prima facie case are not in dispute. Plaintiff is the member of several protected classes and she was terminated from her employment.  To satisfy the third prima facie requirement, Plaintiff must demonstrate that "[s]he was performing [her] job at a level which met [her] employer's legitimate expectations." *McDonald v. Union Camp Corp*., 898 F.2d 1155, 1160 (6th Cir. 1990) (internal quotations omitted).  Plaintiff cannot establish she was qualified by challenging the soundness of the hospital's judgment.  *Id.*

Here, Plaintiff received her third and final written warning on June 25, 2010. Thereafter, Plaintiff did not just violate department policy, she increased the risk for harm to others by informing an involuntarily committed patient that she could leave the hospital, arguing with the nurse and refusing to restrain the patient.  Plaintiff does not deny engaging in the misconduct that resulted in her termination.  Further, Plaintiff ignores her 2010 poor performance review and the prior written warnings received during her employment.  Plaintiff can be rated favorably in the past, and yet later fail to, and continue to fail to meet the employer's expectations. *See Strickland v. Fed. Exp. Corp.,* 45 F. App'x 421, 424 (6th Cir. 2002) (plaintiff was not "qualified" despite prior favorable reviews and commendations as performance expectations change over time); *Webb v. ServiceMaster BSC LLC*, 438 F. App'x 451,

453 (6th Cir. Sept. 14, 2011).

Additionally, Plaintiff cannot show that she was treated differently from similarly situated employees from a non-protected class or that she was replaced by a person who was not a member of her protected class. Plaintiff has failed to come forward with evidence rebutting Defendants' proof that Plaintiff was replaced by an African American female. *McNeil v. Sonoco Prods. Co.*, No. 12-5996, 2013 U.S. App. LEXIS 9553, *4 (6th Cir. May 9, 2013) ("There is no dispute that McNeil's position ultimately was filled by an African-American. Consequently, the district court correctly concluded that McNeil failed to establish he was replaced by a worker outside his protected class."). Moreover, the evidence of record shows that other PSOs, who are not members of Plaintiff's protected classes, were similarly disciplined for misconduct. Darryl Adams, a younger, Caucasian male was issued a final written warning for leaving his post and James Walker, also a younger Caucasian male, was terminated for leaving his post to watch television in the hospital.

Nor has Plaintiff identified a single comparable individual who was treated more favorably. *Sanford v. AXA Equitable Life Ins. Co.*, No. 09-12190, 2010 U.S. Dist. LEXIS 129464, *51 (E.D. Mich. Dec. 8, 2010) ("There also is not any evidence that anyone in a district manager position, such as Plaintiff, ever committed an alleged assault or engaged in such sexual or other harassing conduct as Plaintiff;

-12-

he therefore cannot point to anyone similarly situated.")

Further, to the extent Plaintiff relies on purported two year old statements made by a nurse that an unidentified management representative told her the hospital was planning to get rid of older workers, such statements are inadmissible and cannot support her claim. *Back v. Nestle USA, Inc,*, 694 F.3d 571, 578 (6th Cir. 2012). In any event, these remarks come from non-decision-makers and occurred two years prior to Plaintiff's termination, therefore they cannot show age discrimination because they were made in a context wholly separate and distinct from Plaintiff's termination. *See Marsh*, 2013 U.S. App. LEXIS 7177, at *16-18; *see also Geiger*, 579 F.3d at 621("[D]iscriminatory statements must come from decision-makers to constitute evidence of discrimination" and statements "unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus."); *Rowan v. Lockheed Martin Energy Sys., Inc*., 360 F.3d 544, 560 (6th Cir. 2004) (when individual is not "a decision-maker in connection with the discharge[], . . . . whatever statements he made are irrelevant.").

Even if Plaintiff could establish a prima facie case of discrimination, she cannot demonstrate a question of fact exists that Defendants' legitimate reasons for terminating her were not its true reasons, but rather were pretext for discrimination. To show pretext, Plaintiff must product "evidence from which the jury could

reasonably reject the defendant's explanation and infer that the defendant . . . did not honestly believe in the proffered non-discriminatory reason for its adverse action." *Back,* 694 F.3d at 579.

Under the "honest belief" rule "as long as an employer holds an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Todd v. RBS Citizens, N.A.*, 483 Fed. App'x 76, 83 (6th Cir. 2012); *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) ("When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless.")

In *Sanford, supra*, the plaintiff was accused by another employee of engaging in improper behavior. *Sanford,* 2013 U.S. Dist. LEXIS 129464, at *4-5. Similar to the instant matter, the investigator interviewed multiple witnesses, including the plaintiff, who provided a story contradicted by that provided by the other witnesses. *Id.* at *5-17. The investigator ultimately found, based on the entire record, the complaining employee's "story was more believable than Plaintiff's" and recommended the Plaintiff be fired. *Id.* at *21. The district court applied the honest belief rule and dismissed the Plaintiff's race discrimination claim. *Id.*; *Burton v.*

-14-

*Kroger Corp.*, No. 11-cv-12783, 2012 U.S. Dist. LEXIS 55796, *17-20 (E.D. Mich. Apr. 20, 2012). Here, the evidence shows that Defendant terminated Plaintiff based on its honestly held belief, based on particularized facts, that she committed a major infraction while on final warning.

Based on the foregoing reasons, Defendants are entitled to summary judgment on Counts I, II and III.

### 2. Common Law Claims (Intentional Interference with a Contractual Relationship & Intentional Infliction of Emotional Distress - Counts IV and V)

As to Plaintiff's common law claims, the Court concludes that these claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), which "preempts state law rules that substantially implicate the meaning of the collective bargaining agreement terms." *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). Here, determination of whether Sikorski[1] intentionally interfered with Plaintiff's contractual rights will require interpretation of the CBA, thus this claim is preempted under the LMRA. *Id.* at 217-18.

Additionally, Plaintiff's intentional infliction of emotional distress claim will require the Court to refer to the CBA "to determine whether [Defendants] acted outrageously, or whether [they] merely pursued [their] legal rights in a permissible

---

[1] Defendant Sikorski is the only served Defendant who is named in this count.

-15-

way." *Id.* at 220 (citing *Polk v. Yellow Freight Sys., Inc.,* 801 F.2d 190, 196 (6th Cir. 1986)). Plaintiff claims that "despite actual and/or constructive knowledge that the accusations were false and unfounded, Plaintiff Loyd was written-up and disciplined for alleged infractions of company policy, and was terminated from her employment." Similar to the circumstances in *DeCoe*, Plaintiff's claim will require interpretation of the CBA to determine whether Defendants were pursuing their rights to impose discipline within the confines of just cause as defined by the CBA. Therefore, this claim is likewise preempted by the LMRA. Defendants are entitled to judgment in their favor on Counts IV and V.

## IV. CONCLUSION

For the reasons articulated above, Defendants' Motion for Summary Judgment [#27] is GRANTED. This cause of action is dismissed with prejudice.

SO ORDERED.


Dated: September 9, 2013                    /s/Gershwin A Drain
                                           GERSHWIN A. DRAIN
                                           UNITED STATES DISTRICT JUDGE

-16-